IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JUNE GIBSON,           (06)<br><br>Defendant. | CR. NO. 16-00746 JMS (06)<br><br>ORDER DENYING DEFENDANT'S MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) (COMPASSIONATE RELEASE), ECF NO. 500 |

**ORDER DENYING DEFENDANT'S MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) (COMPASSIONATE RELEASE), ECF NO. 500**

## I. INTRODUCTION

Defendant June Gibson ("Defendant") moves for compassionate release from FCI Waseca, Minnesota ("Waseca") pursuant to 18 U.S.C. § 3582(c)(1)(A).  ECF No. 500.  The court determines that Defendant has not demonstrated extraordinary and compelling reasons to warrant release and that a consideration of the applicable 18 U.S.C. § 3553(a) factors weighs against release.  Thus, based on the following, the Motion for Compassionate Release is DENIED.

///

///

## II. **BACKGROUND**

Defendant is a 47-year-old inmate incarcerated at Waseca and is scheduled for release from custody on October 30, 2027. *See* https://www.bop.gov/inmateloc/ (last visited February 1, 2021).

On March 8, 2018, Defendant pled guilty to two counts: (1) possession with intent to distribute a mixture or substance containing a detectable amount of methamphetamine (count 16); and (2) distribution and possession with intent to distribute of 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine (count 32). *See* ECF Nos. 347-48. On June 28, 2018, Defendant was sentenced to a total term of 120 months imprisonment, and a total term of eight years of supervised release. ECF Nos. 447, 474.[1]

On December 3, 2020, Gibson, acting pro se, filed a Motion for Sentence Reduction under 18 U.S.C. § 3582(c)(1)(A) (Compassionate Release) ("Motion for Compassionate Release"). ECF No. 500. The court then appointed counsel to represent Gibson, and a supplement to the Motion for Compassionate

---

[1] Defendant's total offense level 27, Criminal History Category IV, resulted in an advisory United States Sentencing Guideline range of 100 to 125 months incarceration. But based on the Government's filing of a §851 Special Information, a 120 month mandatory minimum applied. As a result, Defendant's guideline range was 120 to 125 months. *See* ECF Nos. 426, 454 and 474.

Release was filed on January 16, 2021. ECF No. 515. On January 27, 2021, the Government filed its Response. ECF No. 522.

The court decides the motion without a hearing pursuant to Local Rule 7.1(c).

### III. DISCUSSION

**A.    Legal Standard**

Defendant moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018,[2] which provides as relevant:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable, if it finds that—
>
>     (i) extraordinary and compelling reasons warrant such a reduction;
> . . . .
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

---

[2] Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018).

Thus, the court may reduce Defendant's sentence if: (1) Defendant has exhausted the required administrative remedies; (2) Defendant has shown that "extraordinary and compelling reasons" warrant the reduction; and (3) the reduction is consistent with applicable Sentencing Commission's policy statements. Here, the parties agree that Defendant has exhausted her administrative remedies. *See* ECF No. 515 at PageID ## 2925-26 and ECF No. 522 at PageID #3452.

The United States Sentencing Commission's policy statement, United States Sentencing Guideline ("Guideline") § 1B1.13, was promulgated before the First Step Act provided Defendants the ability to file a motion for compassionate release (and, without a quorum, the Sentencing Commission has been unable to amend the Guidelines post-First Step Act). Several courts have thus determined that the Guidelines lack any policy statement "applicable" to a defendant-filed motion for compassionate release. *See United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020) (stating that Guideline § 1B1.13 "is not an 'applicable' policy statement when an imprisoned person files a motion for compassionate release"); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020) (stating that "because the Guidelines Manual lacks an applicable policy statement, the trailing paragraph of § 3582(c)(1)(A) does not curtail a district judge's discretion"); *United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020) (stating that when a defendant "exercises his new right to move for compassionate release on his own behalf,"

"§ 1B1.13 is not an 'applicable' policy statement at all"); *see also United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020) ("[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release."); *but see United States v. Arceneaux*, 2020 WL 7230958, at *1 (9th Cir. Dec. 8, 2020) (mem.) (affirming district court's denial of compassionate release based in part on consideration of § 1B1.13(2)).

Previously, this court agreed that it could consider the "full slate" of extraordinary and compelling reasons, although for slightly different reasons. That is, the court determined that the Guideline commentary's fourth, catch-all provision (granting discretion to the BOP Director to determine whether other extraordinary and compelling reasons exist), applies equally to the court when ruling on motions for compassionate release. *See United States v. Hernandez*, 2020 WL 3453839, at *4 (D. Haw. June 24, 2020). Regardless of the ultimate reasoning applied, the court agrees with Defendant that the court is not bound by Guideline § 1B1.13's restrictions, but instead may make its own independent determination whether extraordinary and compelling reasons warrant a sentence reduction.

## B.      Extraordinary and Compelling Reasons

Defendant bears the burden to establish extraordinary and compelling reasons that warrant compassionate release. *See, e.g.*, *United States v. Bogema*, 2020 WL 6150467, at *3 (D. Haw. Oct. 20, 2020) (citations omitted). Here, Defendant claims that the Motion for Compassionate Release should be granted because she (1) is 47 years old, and suffers from a number of medical issues, including severe obesity,[3] type 2 diabetes mellitus, asthma, and hypertension; (2) has contracted and recovered from COVID-19 while incarcerated at Waseca; and (3) is unable to provide the necessary self-care to manage her medical conditions at Waseca.[4]  ECF No. 515 at PageID ## 2926-42.

---

[3] Although her weight has fluctuated, on October 22, 2020 Gibson weighed 300.6 pounds and she is 5'6" tall. *See* ECF No. 521 at Page ID ## 3308 (weight) and 3393 (height). With this height and weight, Defendant has a body mass index of 48.5. *Calculated using* https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last visited February 1, 2021).

[4] Specifically, Gibson claims that she is suffering from serious medical conditions that "substantially diminishe[s] the ability of the defendant to provide self-care within the environment of a correctional facility." ECF No. 515 at PageID # 2938. But there are no facts—other than the general restrictive conditions imposed at Waseca for all inmates due to COVID-19—to support this allegation. That is, the court is presented with no *evidence* that Gibson cannot provide self-care for her obesity, diabetes, asthma or hypertension. And to the extent that Gibson argues that it is difficult to follow CDC recommendations in a correctional setting, such generalized concerns regarding COVID-19 are insufficient to establish extraordinary and compelling reasons to justify release. See *United States v. Drummondo-Farias*, 460 F. Supp. 3d 1008, 1014 (D. Haw. 2020); *United States v. Brooks*, ___ F.Supp.3d ___, 2020 WL 5849712, at *3 (W.D. Pa. 2020); *United States v. Mitchell*, 471 F. Supp. 3d 1130, 1138 (W.D. Wash. July 8, 2020).

Defendant's severe obesity (BMI of 40 or greater) and type 2 diabetes mellitus each place her at an increased risk of severe illness should she again contract COVID-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited February 1, 2021). Further, an individual with moderate to severe asthma and hypertension "might be at an increased risk." *Id.*[5]

On the other hand, at 47 years old, Defendant is not in a particular high-risk age group. As stated by the CDC:

> The risk for severe illness from COVID-19 increases with age, with older adults at highest risk. For example, people in their 50s are at higher risk for severe illness than people in their 40s. Similarly, people in their 60s or 70s are, in general, at higher risk for severe illness than people in their 50s. The greatest risk for severe illness from COVID-19 is among those aged 85 or older.

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited February 1, 2021).

Next, BOP reports that of 622 inmates tested at Waseca, 439 have tested positive.[6] *See* https://www.bop.gov/coronavirus/ (COVID-19 resource

---

[5] Gibson also suffers from depression and anxiety. *See*, *e.g.*, ECF No. 515 at PageID # 2937 and ECF No. 521 at PageID # 3220.

[6] Waseca currently houses 645 inmates. *See* https://www.bop.gov/locations/institutions/was/ (last visited February 1, 2021).

page) (last visited February 1, 2021). But, at present, Waseca is doing much better—BOP presently reports that 7 inmates and 2 staff members have "confirmed active cases" of COVID-19. *See* https://www.bop.gov/coronavirus/ (COVID-19 resource page) (last visited February 1, 2021). Although the court recognizes that COVID-19 cases could rise again at Waseca, the institution has shown great improvement over the past months.

In addition to these considerations, Defendant contracted COVID-19 in late September 2020, was hospitalized, and has since recovered—facts that counsel heavily against a finding of extraordinary or compelling reasons to warrant release. *See*, *e.g.*, ECF No. 521 at PageID ## 3281, 3302-03.

As stated by the CDC, "[c]ases of reinfection of COVID-19 have been reported but are rare." *See* https://www.cdc.gov/coronavirus/2019-ncov/if-you-are-sick/quarantine.html (last visited February 1, 2021). And the United States Department of Health and Human Services has stated that "of the millions of patients who have recovered from COVID-19, which is caused by a coronavirus, only a handful have been confirmed as having gotten the disease again. Based on the reported recurrence rate from the early stages of ongoing research, the chances of becoming reinfected appear to be very small." *See* https://combatcovid.hhs.gov/ive-had-covid-19 (last visited February 1, 2021). And a study by the University of Oxford and the Oxford University Hospitals NHS

Foundation Trust found that those who previously had COVID-19 are highly unlikely to contract the illness again for at least six months following the first infection. *See* https://www.ox.ac.uk/news/2020-11-20-prior-covid-19-infection-offers-protection-re-infection-least-six-months# (last visited February 1, 2021). The National Cancer Institute agrees, reporting that the COVID-19 antibody "protective effect is strong and comparable to the protection afforded by effective SARS-CoV-2 vaccines, although developing protection from vaccination is much safer than from natural infection. This finding suggests that people who have a positive antibody test result using widely available assays have substantial immunity to SARS-CoV-2 and are at lower risk for future infection." *See* https://www.cancer.gov/news-events/cancer-currents-blog/2020/coronavirus-antibodies-protect-against-future-infection (last visited February 1, 2021).

Taking into account Defendant's age, risk factors, and that she has already contracted and recovered from COVID-19, the court concludes that she has failed to demonstrate that extraordinary and compelling reasons warrant compassionate release.

At the next step, the court must examine the applicable § 3553(a) factors. And, after careful review, the court determines that a consideration of those factors weighs heavily against Defendant's release. *See United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020) (stating that compassionate

release is discretionary and may be refused after a consideration of the applicable § 3553(a) factors).

C.     **Section 3553(a) Factors**

As relevant to this case, the § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant;[7] and (2) the need for the sentence imposed: (a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (b) to afford adequate deterrence to criminal conduct; (c) to protect the public from further crimes of the defendant; and (d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.  18 U.S.C. § 3553(a)(1)-(2).  And under the parsimony clause, the court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth" in § 3553(a)(2).

Defendant was a significant mid-level distributor of methamphetamine in Honolulu.  Between February 3, 2016 and July 17, 2016, Defendant obtained a total of 1,219 grams of methamphetamine for resale on 35 separate occasions.  *See* Presentence Investigation Report ("PSR") ¶ 54, ECF No.

---

[7] As part of the § 3553(a) analysis, the court considers Defendant's post-offense conduct, including her rehabilitation while in custody.  *See Pepper v. United States*, 562 U.S. 476, 491 (2011).

426 at PageID ## 1970-71.  And more concerning, Defendant has a significant and troubling criminal history, resulting in a criminal history category IV.  *Id.* ¶¶ 76-84, ECF No. 426 at PageID ## 1973-78.  Aside from the instant conviction, Defendant has been convicted of the following offenses: promoting dangerous drug 3 in 1993; assault 3 in 1996; promoting dangerous drug 3 in 1997; promoting dangerous drug 3 in 2004; promoting dangerous drug 2 in 2008; and identity theft 3, theft 2, unauthorized possession of confidential personal information and forgery 2 in 2017.  *Id*.  For some of these offenses, Defendant's probation or parole was revoked, and she committed the instant offense while on parole.  *Id*.

Further, Defendant still has a substantial portion of her sentence to serve—she is not scheduled for release from custody until October 30, 2027.  *See* https://www.bop. gov/inmateloc/  (last visited February 1, 2021).  Thus, she has over 6 years left to serve of her ten year sentence.[8]  Reducing Defendant's sentence to time served,  given the nature of her offense and criminal history, would severely undermine the goals of sentencing  set forth in § 3553(a)(2).

---

[8] When evaluating the § 3553(a) factors, courts consider the amount of time remaining on a defendant's sentence—whether short or long—in determining whether to grant compassionate release.  *See, e.g.*, *United States v. Pawlowski*, 967 F.3d 327, 330-31 (3d Cir. 2020); *Chambliss*, 948 F.3d at 694; *United States v. Maka*, 2020 WL 2544408, at *4 (D. Haw. May 19, 2020); *United States v. Bogdanoff*, 459 F. Supp. 3d 653, 659 (E.D. Pa. 2020); *United States v. Moskop*, 2020 WL 1862636, at *1-2 (S.D. Ill. Apr. 14, 2020); *United States v. Farmer*, 2020 WL 4057550, at *2 (N.D. Ohio July 20, 2020); *United States v. Steffey*, 2020 WL 3840558, at *1 (D. Nev. July 8, 2020).

In reaching this conclusion, the court is aware that Gibson's offense conduct did not involve violence, that no firearm was possessed or used, that she was not an organizer or leader, and that she has completed various BOP programs to better herself.[9]  Regardless, a consideration of the § 3553(a) factors weighs heavily against granting the relief sought.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion for Sentence Reduction under 18 U.S.C. § 3582(c)(1)(A) (Compassionate Release), ECF No. 500, is DENIED.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, February 1, 2021.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*United States v. Gibson*, Cr. No. 16-00746 JMS (06), Order Denying Defendant's Motion for Sentence Reduction under 18 U.S.C. § 3582(c)(1)(A) (Compassionate Release), ECF No. 500

---

[9] Gibson also argues that her age—47—"lessens her recidivism risk." ECF No. 515 at Page ID # 2950.  But given that Gibson committed the instant offense at age 43, the court has serious doubts that age alone would lessen her recidivism risk.